St. Louis & San Francisco Railway Company *v.* Tapp.

Opinion delivered October 30, 1897.

HOMESTEAD—GRANT OF RIGHT OF WAY THROUGH.—An agreement by one who has entered a homestead under the act of congress, made before the entry is perfected, to convey to a railway company a right of way through such homestead, and also to convey five acres thereof for depot and other railroad purposes, whenever he obtained his patent, having been acted upon by the railway company, will, upon the issuance of such patent, be specifically enforced as to the right of way, and also as to so much of the five acres specified as was necessary for railroad purposes at the time of its appropriation, or would be necessary in the immediate future.

Appeal from Washington Circuit Court in Chancery.

EDWARD S. MCDANIEL, Judge.

#### STATEMENT BY THE COURT.

The railway company brought this suit against the widow and heirs of John B. Kelton to compel specific performance of

a contract made by said Kelton, in his lifetime, to convey to said railway company a right of way over forty acres of land described in the complaint, 200 feet in width, and also five acres of land for a railroad "reserve," for depot grounds, etc.

John Kelton had. homesteaded a tract of United States land, and, before completing his entry, commuted the same, and purchased the land from the government at $1.25 per acre. In 1881, before he had received his patent from the government for the land, or proved up his homestead, he contracted with the railway company that, in consideration that it would establish a depot on this forty-acre tract, he would deed it 200 feet in width for right of way, and five acres for depot and other railroad purposes, when he obtained his patent for the land. The railway company took possession of the five acres, erected some valuable buildings on same, such as depot buildings, section house, etc., cattle pen and chute, and turn-table. The cattle pen and chute and turn-table were removed before this suit was brought. The tunnel watchman's house was built on the reserve, and the railway company used this reserve as a tie and timber yard continuously to the time of the trial. J. B. Kelton received a patent for the forty acres in 1884, and died in 1885, without having conveyed the right of way or the five acres, according to his contract, though prior to his death he had the reserve surveyed and a town platted, and had filed the plat showing the five acres set aside for the railway.

The railway, being in possession, filed a bill to quiet its title, and for specific performance. The appellants resisted, setting up in their answer that the land was government land, and had been homesteaded by Kelton, and asked for damages. The court below held the contract binding as to the right of way of two hundred feet in width, but found that "the plaintiff was not the owner and entitled to the possession of any part of the land in controversy in this suit, outside of the right of way * * * heretofore decreed to the plaintiff as aforesaid, but that said lands belong to Malinda S. Tapp * * * and the children and heirs at law of John B. Kelton, deceased," and adjudged that plaintiff take nothing by its suit except the right of way, two hundred feet wide.

*L. F. Parker* and *B. R. Davison*, for appellant.

A homesteader has a right to convey "any portion" of his homestead for a right of way to a railroad. Rev. St. U. S. § 2888. Even in the absence of this statute, there is nothing to forbid such a conveyance, and hence it is valid. 18 Wall. 307. The "right of way" means all land necessary for railway purposes. Our state statute is as broad as the act of congress in respect to amount of land. Sand. & H. Dig., § 6175. The railway company has the right, within reasonable limits, to determine the amount of lands required; and the opinion of witnesses to the contrary do not constitute a defense against the legality of their claim. 14 Am. & Eng. R. Cas. 384; 24 do. 261. If there be no objection made at the time to the amount, the right to object is waived. 10 Am. & Eng. R. Cas. 444. Such conveyances are not against public policy (21 Kas. 322), and the homesteader had a right to convey. 54 Fed. 228; 52 N. W. 685–6; 24 S. W. 636; 38 Kas. 142. It was not necessary for his wife to join in the conveyance. 38 Ia. 182; 29 Am. & Eng. R. Cas. 544; 15 *id.* 380; 63 Tex. 586; 20 S. W. 493, S. C. 112 Mo. 103. Since the homesteader's right is superior to that of the railway company, the only way for them to obtain a right of way is by grant. 32 Minn. 95.

*Malinda S. Tapp, pro se.*

The evidence is insufficient to warrant a decree of specific performance, The railway company can acquire title to lands in this state only by condemnation proceedings or grant from owner. 15 Ark. 322; 44 Ark. 334; 34 Ark. 663; 39 Ark. 424. The proof fails to show any adverse possession. 54 N. Y. 631. There can be no adverse possession against the United States, or their grantee, until there be a new entry made. 2 Gilm. 652; 95 Ill. 391; 62 Ill. 281. The contract for the five-acre reserve cannot be disconnected from that for an undivided half interest in the forty acres; and therefore the whole contract is void. 48 Ark. 362; 47 Ark. 351; 19 Wall. 646; 35 Minn. 199; *ib.* 422; 7 *Ib.* 343; 9 *ib.* 259. The meaning of the language "any portion of his homestead for a right of

way" is that he may convey a strip not over 200 feet in width in any portion of his homestead.

HUGHES, J., (after stating the facts.)    The act of congress of March 3, 1875, gives to every railroad a right of way 200 feet wide across all government lands, and not exceeding twenty acres at depots.    18 U. S. Statutes at large, p. 482.

Section 2762, Sandels & Hill's Digest, provides that railroad corporations shall have power "to purchase, and by voluntary grants and *donations* receive and take, and by its officers, engineers and surveyors and agents enter upon and take possession of and hold and use all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroad and stations, depots and other accommodations necessary to accomplish the object for which the corporation is created, but not until the compensation to be made therefor, as agreed upon by the parties, or ascertained as hereinafter provided, be paid to the owner or owners thereof, or deposited as hereinafter directed, unless the consent of such owner be given to enter into possession."    See also subdivision 3, § 6175, Sand. & H. Dig.

Section 2770 of Sandels & Hill's Digest provides that "any railroad, telegraph or telephone company, organized under the laws of this state, after having surveyed and located its lines of railroad, telegraph or telephone, shall in all cases where such companies fail to obtain by agreement with the owner of the property through which said lines of railroad, telegraph or telephone may be located, the right of way over the same, apply to the circuit court of the county in which said property is situated, by petition, to have the damages for such right of way assessed; giving the owner of the property at least ten days' notice in writing of the time and place where such petition will be heard."

Section 2781, Sandels & Hill's Digest, provides that "the words 'right of way,' as used in this act, shall be construed to mean and include all grounds necessary for side tracks, turnouts, depots, workshops, water stations and other necessary buildings."    In section 2288, Revised Statutes of the United States, it is enacted that "any person, who has settled or hereafter may settle, on public lands, either by pre-emption or by

virtue of the homestead laws, or any amendments thereto, shall have the right to transfer by warranty against his own acts any portion of his pre-emption or homestead   *   *   *   for the right of way of railroads across such pre-emption or homestead, and the transfer for ·such public purposes shall in no way vitiate the right to complete and perfect the title to their pre-emption or homestead."

It appears from these several acts of the legislature of this state that a railroad company may purchase, and receive by voluntary grant or donation, "all such lands and real estate" *   *   *   as may be necessary for the construction and maintenance of its railroad, stations, depots, and other accommodations necessary to accomplish the object for which the corporation was created, and that it may condemn, by adversary proceedings, such lands, upon failure to agree with the owner therefor. It will be observed that these statutes provide that it may take only such lands as are necessary for* the purposes named. The railroad company exercises the right to determine the amount necessary, subject of course to the judgment of the courts in case of contest. Land cannot be taken for private `use. *Smith* v. *Chicago & W. I. R. Co.*, 14 Am. & Eng..R. Cas. 384; *Chicago & E. I. R. Co.* v. *Wiltse*, 24 Am. & Eng. R. Cas. 261. "The taking of private property under the eminent domain statutes is in deregation of common right, and the grant of power to corporations for its exercise will be strictly construed." 24 A. E. 264; Cooley's Const. Lim. 530, 531.

"A right of way may be granted over a homestead (if at all) without the concurrence of the wife. The right of way is an easement, and not a title." Mills, Eminent Domain, § 71.

It is settled that, before perfecting his homestead entry, the homesteader can make no valid contract for the conveyance of his homestead, or any part of it. Such contract would be contrary to the policy of the government in regard to homesteads, and would be void.

Section 2262 of the Revised Statutes of the United States provides that before ·any person shall be allowed to enter land for homestead, he shall make oath that he has not settled upon such land to sell the same on speculation, but in good faith to appropriate it to his own exclusive use, and that he has not,

directly or indirectly, made any agreement or contract, in any way or manner, with any person whatsoever, by which the title which he might acquire from the government of the United States should inure in whole or in part to the benefit of any person except himself; and if any person swears falsely in the premises, he shall forfeit the money which he may have paid for such land, and all rights and title to the same." See also *Cox* v. *Donnelly*, 34 Ark. 762; *Marshall* v. *Cowles*, 48 Ark. 362.

As a grant is the equivalent of condemnation by adversary proceedings, and inasmuch as the railroad might have condemned as much of this land as was necessary for the purposes mentioned,[*] the grant of so much of the five-acre tract for a "reserve" as may be shown to have been necessary at the time it was appropriated, or as would be necessary in the immediate future, for the construction and maintenance of the road, and stations, depots, and other accommodations, which may be shown by proof to have been necessary to accomplish the object for which the corporation was created, will not be disturbed.

As the court below decided this case upon the ground that the railway company was not the owner of the land, and that the contract of Kelton to sell it was void, and does not seem to have determined the question as to how much of this land was necessary for legitimate railroad purposes, and inasmuch as the evidence in this case upon the question of such necessity is conflicting, indefinite and unsatisfactory, the decree is reversed, and the cause is remanded, with directions to the court below to take testimony, and ascertain how much, if any, of the five acres in controversy, denominated "Railroad Reserve," was necessary for the purpose indicated, at the time of the completion of the road, or the appropriation of same by the railway company, or would be necessary in the immediate future for such purposes, and that a decree be entered in accordance with such ascertainment.

BUNN, C. J., dissents.

---

[*]See Lewis, Em. Dom. § 264, and authorities cited. (Rep.)