James Weatherby COLEMAN, et al. *v.* MISSOURI PACIFIC RAILROAD COMPANY

87-261 745 S.W.2d 622

Supreme Court of Arkansas
Opinion delivered February 29, 1988

634

*Joe Holmes*, for appellants.

*Herschel H. Friday, Michael G. Thompson* and *M. Gayle Corley*, by: *Michael G. Thompson*, for appellee.

TOM GLAZE, Justice. This case involves the construction of three deeds, which were executed in 1902 by J. S. Coleman and

his wife to the El Dorado and Bastrop Railway Company, predecessor in interest to the appellee. Appellants, the sole heirs of Mr. and Mrs. J. S. Coleman, filed this quiet title action, claiming that the deeds in question conveyed only right of way easements and that the title to the property has since reverted to them since the appellee no longer uses the easements for railroad purposes. The trial court rejected the appellants' contentions and quieted fee simple title to the disputed property in the appellee. We affirm.

The sole question on appeal is whether each of the three deeds in issue conveyed an easement or a fee simple title. When called upon to construe deeds and other writings, this court is concerned primarily with ascertaining the intention of the parties, and such writings will be examined from their four corners for the purpose of ascertaining that intent from the language employed, and, if such intention clearly appears, effect will be given thereto. *Chicago, Rock Island & Pacific R.R. Co.* v. *Olsen*, 222 Ark. 828, 262 S.W.2d 882 (1953). In *Olsen*, the court stated the general rule to be that if the deed purports to convey only a right of way, it does not convey the land itself, but the fee remains in the grantor, and the railway company acquires a mere easement in perpetuity for railway purposes.

In the instant case, Mr. and Mrs. J. S. Coleman's first deed was executed on May 9, 1902, and this deed purported to convey "a strip of land one hundred feet wide." That deed contained no reference that the strip was conveyed as a right of way. However, on July 23, 1902, the Colemans executed two additional deeds: (a) one conveyed "a strip of land 100 ft. wide for right of way also an addition at strip of land 250 ft. wide extending lying on the south side of said right of way and adjacent thereto . . . ." and (b) the other conveyed "a strip of land 100 ft. wide for right of way . . . also extra for depot grounds a strip of land 250 ft. wide lying south of and adjoining said right of way." Appellant argues that the language used in the granting clause of the deeds—when considered with other factors—reflects that the Colemans intended only to convey right of way easements for railroad purposes. Since appellee no longer uses these properties for railroad purposes, appellants claim these lands have reverted to them as heirs of Mr. and Mrs. J. S. Coleman. In making such an argument, appellants rely heavily on the case of *Daugherty* v.

*Helena & Northwestern Ry.*, 221 Ark. 101, 252 S.W.2d 546 (1952). *See also El Dorado & Wesson Ry. Co.* v. *Smith*, 233 Ark. 298, 344 S.W.2d 343 (1961).

■ In *Daugherty*, the deed contained language in its granting clause that is almost identical to that which appears in the two deeds here dated July 23, 1902, *viz.*, "In consideration of the sum of five dollars and of the benefits to accrue to us from the construction of the Missouri & North Arkansas Railroad, we . . . convey . . . *a strip of land 100 feet in width for a right of way* . . ." In holding that the deed in *Daugherty* granted an easement and not a fee simple title, the court reasoned that the deed referred not simply to a strip of land but instead specified a strip of land 100 feet in width "for a right of way." The court further said that, when the grantor unequivocally conveys the fee, his designation of the property's intended use should be regarded as surplusage; but when the grantor's intention is itself subject to question, then the fact that he attempts to restrict the future use of the property becomes a factor in the interpretation of his deed. In holding the parties, by their deed, intended to convey an easement, the court emphasized those factors it believed indicated an easement, not a fee simple title, *viz.*, that only a nominal consideration had been paid by the railway company for the strip of land; that the shape of the tract conveyed indicated a right of way; and that the railway company was given the right "to take stone, gravel and timber and to borrow earth *on the said right of way*" for the construction and maintenance of the railroad. Concerning the last factor, the court reasoned that if a fee simple had been intended by the parties, it would have been absurd to provide that the grantee, railway company, could take its own stone and gravel and borrow its own earth.

Although the granting language in the *Daugherty* deed is quite similar to that in the two July 1902 deeds now before us, other facts apparent here clearly distinguish the Coleman deeds from the one considered in *Daugherty*. For example, the grantee railroad company, by the three deeds involved here, was acquiring adjacent property so as to lay a track and to construct a depot, and while the two July 1902 deeds contained "right of way" language, the parties' first deed included no words of limitation or purpose. None of the original three deeds were titled as right of way easements, although when filed, a scrivener in the clerk's

office wrote "right of way" on the clerk's records.

Next, in all three deeds, we find the railroad company was granted "the right of increasing the width of the [100 foot wide strip of land] for necessary slopes, embankments and turnouts, and with the right of changing water courses, and of taking a supply of water and of borrowing or wasting earth, stone or gravel *outside of said limits* . . . ." Clearly, such language inferentially reflects that the Colemans deeded the strips of lands in fee simple title, and in addition, they conveyed the railway company the right to remove or affect the water, earth, gravel, or stone located outside the lands the company was granted. In comparison, we find the contrasting language found in the deed in *Daugherty* which granted the railway company the right to the earth, stone or gravel *on* the right of way, thereby indicating the company had only an easement.

Another distinguishing and important fact found here that was not existent in *Daugherty* is that, in all three deeds, Mrs. Coleman joined in executing the deeds by renouncing her homestead and dower rights. As was noted by the court in *St. Louis & San Francisco Ry. Co.* v. *Tapp*, 64 Ark. 357, 42 S.W. 667 (1897), a right of way is an easement, not a title, and it may be granted over a homestead without the concurrence of the wife. Thus, the clear implication from Mrs. Coleman's relinquishment of her homestead and dower rights is that the Colemans intended to convey fee simple title rather than an easement.

Finally, we note that the two July 1902 deeds, while containing right of way language, also included language granting the railway company an "extra" 250 ft. wide strip of land located adjacent to and on the south side of the 100 ft. wide right of way. One of these deeds described the 250 ft. wide strip of land as being for depot grounds. In *Lynch* v. *Cypert*, 227 Ark. 907, 302 S.W.2d 284 (1957), the court construed a warranty deed to have conveyed fee simple title when the deed terms granted "50 feet on either side of the 100 feet of right of way heretofore deeded to St. Louis & N. Ark. Ry. Co. for depot grounds." In distinguishing the deed in *Daugherty* from the one before it, the court in *Lynch* said the deed in *Daugherty* was expressly "for a right of way," which brings to mind the thought of an easement, while a depot site suggests a more extensive use of the land.

In sum, appellants underscore factors reflected in the three disputed deeds and ably argue prior cases wherein this court found railroad easements. Of course, appellee cites precedents where this court had reached the opposite conclusion. *See Rostell* v. *Ark. & Ozark Ry. Corp.*, 230 Ark. 515, 323 S.W.2d 539 (1959), and *Lynch* v. *Cypert*, 227 Ark. 907, 302 S.W.2d 284.

 Based upon our examination and study of the deeds here, we are convinced that the distinguishing factors we discussed above clearly support the trial judge's holding that the parties here intended to convey the disputed properties in fee simple and not as easements. In so holding, we have not overlooked appellants' other arguments.[1] In this regard, appellants urge that the parties' use of quitclaim deeds instead of warranty deeds reflects they did not intend to convey the lands in fee simple. Also, as we alluded to earlier, appellants suggest the nominal consideration given by the railway company is reason to believe the Colemans intended a mere right-of-way conveyance. In response, we need only say that quitclaim deeds, like warranty deeds, are commonly used to convey fee simple titles, and while nominal monetary consideration might be recited in a deed, other good and valuable consideration may exist as well. For instance, in this case, the deeds recite "consideration of the benefits to accrue to the [grantors] from the building of the railway company." In 1902, such a consideration could well have been most valuable.

In accordance with the reasons given above, we affirm the trial court's decision.

---

[1] In their reply brief, the appellants also suggest that other parties' deeds which conveyed land along the same railway should be considered by this court when construing the Coleman deeds. Apparently, the appellee disclaimed any fee simple title in those tracts. Those documents simply are not controlling as to the deeds here, and as stated previously, we limit our review to the four corners of the instruments before us.