The NATURE CONSERVANCY and Arkansas Natural
Heritage Commission *v.* Grace Evelyn Clayton
KOLB, Jessie Pearl Gosney, John W. Clayton,
Jr., Edith Eleanor Taylor, Edward Schafer and
Betty Schafer

92-752                                    853 S.W.2d 864

Supreme Court of Arkansas
Opinion delivered May 10, 1993

*Winston Bryant*, Att'y Gen., by: *Susan G. Jones*, Asst. Att'y Gen., for appellant Nature Conservancy.

*Haley, Claycomb, Rober & Anderson*, by: *Bruce Anderson*, for appellant Arkansas Natural Heritage Commission.

*Green & Henry*, by: *David G. Henry*, for appellees.

STEELE HAYS, Justice. This litigation involves disputed claims to a tract 100 feet wide across the north half of a section of land in Lonoke County. The tract, formerly used as a railroad right of way, extends across acreage owned by appellees, Edward and Betty Sue Schafer, and by appellees, Grace Evelyn Clayton Kolb, Jessie Pearl Gosney, John W. Clayton, Jr., and Edith Eleanor Taylor. The opposing claimants are appellants, The Nature Conservancy and Arkansas Natural Heritage Commission. The Schafer tract comprises the W 1/2 NW 1/4 and the Kolb tract, the E 1/2 NW 1/4 and the NE 1/4.

In 1853 the Memphis and Little Rock Railroad Company was incorporated by Act of January 11, 1853, of the Arkansas General Assembly and authorized to acquire land on which to construct a railroad. The ultimate successor in interest was the Chicago Pacific Corporation which abandoned the operation around 1985 and removed all tracks and ties from the right of way. Chicago Pacific Corporation conveyed its interest to Brewer & Taylor Company, which in 1986 conveyed to The Arkansas Nature Conservancy. The Nature Conservancy then conveyed in part to Arkansas Natural Heritage Commission. The parties stipulated that appellees are the owners of the lands on either side of the disputed strip.

Appellees filed suit to quiet title, alleging that upon abandonment of the tract for railroad purposes all interest in the right of way reverted to the appellees as the owners of the fee to their respective properties. The case was submitted to the trial court upon written stipulations. The trial court ruled the Chicago Pacific Corporation and its predecessors held easements in the subject tract which had been abandoned and appellees became the owners in fee by reversion.

The Nature Conservancy and Arkansas Natural Heritage Commission rely on three points for reversal:

## I.

The Trial Court erred in ruling that the Act of January 11, 1853, of the General Assembly of the State of Arkansas, conveyed only an easement to the Memphis and Little Rock Railroad Company, the predecessor in interest of the Appellants.

## II.

The Trial Court erred in ruling that the Quitclaim Deed conveying that part of the subject land located in the Northeast Quarter of Section 24 from Charles E. Smiley to the Chicago, Rock Island and Pacific Railway Company was an easement and not a fee simple conveyance.

## III.

The Trial Court erred in ruling that the land involved in this litigation reverted to the Appellees rather than to the heirs of the predecessors in interest of the Appellees who retained ownership of any reversion by excepting the subject land from conveyances out of them.

## I.

The parties stipulated that prior to the Act of January 11, 1853, and up to the present time, appellees have had continuous exclusive possession of the lands traversed by the right of way, subject only to the dispute now before us. Thus, the issue is whether the language of the 1853 act created title in fee simple or merely an easement.

In general the act authorized the formation of a railroad and granted to that corporation the power to buy and appropriate land for the construction of a railroad between Memphis and Little Rock. Section 15 of the act provided the procedure for condemnation when the corporation and the landowners could not agree upon a price. Section 16 outlined the procedure when there was no contract with the landowner (presumably where the owner could not be located):

> In the absence of any contract with the company in relation to the lands through which the said road may pass, signed by the owner thereof, or by his agent, or any claimant, or person in possession thereof, which may be confirmed by the owner, it shall be presumed that the land upon which the said road may be constructed, together with a space of one hundred feet[1] on each side of the center

---

[1] Although the act purports to grant one hundred feet on either side of the center of the road, the railroad's usage seems to have been limited to fifty feet on either side.

of said road, has been granted to the company by the owner thereof, and the said company shall have good right and title thereto, and shall have, hold and enjoy the same as being as the same to be used only for the purpose of the road, and no longer, unless the person or persons owning the said land at the time that part of the road which may be on said road [land] was finished, or those claiming under him, her, or them, shall apply for an assessment for the value of said lands, as hereinafter directed, within five years next after that part of said road was finished; and in case the said owner or owners, or those claiming under him, her, or them, shall not apply for such assessment within five years next after the said part was finished, he, she, or they shall be forever barred from recovering the said land, or having any assessment or compensation therefore. . . .

Both appellants and appellees rely on language in Section 16. Appellees cite the following:

[I]t shall be presumed that the land upon which the said road may be constructed . . . has been granted to the company by the owner thereof and the said company shall have good right title thereto, *and shall have, hold and enjoy the same as the same to be used only for the purpose of the road and no longer.* . . . [Our emphasis.]

Whereas, appellants cite this language:

. . .unless the person or persons owning the said land at the time that part of the road which may be on said road [land] was finished or those claiming under him, her, or them, shall apply for an assessment for the value of said lands, as hereinafter directed, within five years next after that part of said road was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply for such assessment within five years next after the said part was finished, he, she or they *shall be forever barred from recovering the said land, or having any assessment or compensation therefore.* . . . [Our emphasis.]

Thus, appellants contend that in the absence of a claim by the true owner within five years of completion of the railroad,

the railroad owns the property in fee simple. Appellants urge that this grant is not a delegation of the power of eminent domain because the Constitution of 1836, in effect at the time, contained no provision for eminent domain. That may be true, but we have held that the power of eminent domain belongs inherently to the state. In *Cairo and Fulton Railroad Co.* v. *Turner*, 31 Ark. 494 (1876), this Court considered a companion enactment to the act of 1853, involving the Cairo and Fulton Railroad and the powers delegated. We wrote:

> The Constitution of most of the American states contains a similar provision [to that of the eminent domain provision in the United States Constitution.] Our Constitution of 1836 contained no such provision, but, in *Martin et al., ex parte*, 19 Ark. 206, it was well said by Chief Justice Watkins: . . .The right of eminent domain is inherent in the government or sovereign power. . . . The right of eminent domain means, that when the public necessity or common good requires it, the citizens may be forced to sell his property for fair value. . . .

The rules affecting the construction of statutes delegating the powers of eminent domain are well settled. They are to be strictly construed in favor of the landowner. the editors of American Jurisprudence provide this general overview:

> The legislature has the plenary power to define the quantum of interest or estate which may be acquired by eminent domain, whether an easement or the fee, or some estate intermediate to these two, such as a base, conditional or determinable fee. *The interest taken depends on the statute authorizing the taking* and the extent of the title or rights which may be adjudged under the pleadings in the particular proceedings. *Generally the rule of construction applied to determine the extent of the grant of the power of eminent domain, and the interest obtainable, is limited to the express terms or clear implication of the statute in which the grant is contained.* [Our emphasis.]

26 Am. Jur. 2d *Eminent Domain* § 132 (1966).

Our own cases are in accord with that summation. In *City of Little Rock* v. *Sawyer*, 228 Ark. 516, 309 S.W.2d 830 (1958), we

said:

> Statutes which relate to the power of eminent domain should be strictly construed in favor of the landowner largely because they are in derogation of the common law.

*See also Hampton* v. *Arkansas State Game and Fish Commission*, 218 Ark. 757, 238 S.W.2d 950 (1951): ("The right of eminent domain is to be strictly construed against the condemnor and in favor of the landowner.") In *Graham* v. *St. Louis, Iron Mountain & Southern Railway Company*, 69 Ark. 562, 65 S.W. 1048 (1901), we considered virtually identical language in a deed ("To have and to hold the same to the said party of the second part so long as said lands are used for the purpose of a railroad and no longer") and construed the language to convey a perpetual easement rather than a fee.

In view of those rather decisive canons of construction we think the evident intent of the legislature was to empower the railroad to acquire an easement to continue as long as the lands were used for purposes of a railroad, but no longer. Arguably, the apparent ambiguity in Section 16 can be reconciled by construing the intent to be that an owner who fails to act within five years[2] loses any right to eject the railroad or to recover compensation for the taking of the right of way, but not the right of reversion in the event of abandonment. Admittedly, the use of the word "forever" without qualification casts a shadow over that interpretation, but we nevertheless infer from the act in its entirety, that the phrasing presupposes the railroad has not abandoned the right of way. But even if the ambiguity cannot be plausibly explained, we believe the rules of construction favorable to the landowner in eminent domain must govern.

In the alternative, appellants argue that even if the act of 1853 did not exist, appellants are the owners of the tract by virtue of adverse possession. But of course the act did exist and it requires no supporting authority to observe that under all the traditional concepts of adverse possession the railroad could not acquire title under that doctrine of the law where its possession and usage were consistent with a grant. Its possession, in other

---

[2] Reduced to two years by Act of January 19, 1855.

words, was not adverse and hostile, but in accordance with the grant by which it obtained possession.

## II.

A second argument, which concerns only the east half of the tract, is based on a quitclaim deed dated September 9, 1916, from C.E. Smiley and Rhoda A. Smiley, his wife, to the Chicago, Rock Island and Pacific Railway Company, a successor to the Memphis and Little Rock Railroad Company. The instrument, reciting a consideration of $1.00, purports to "grant, sell and quit-claim unto the said The Chicago, Rock Island and Pacific Railway Company, and unto its successors and assigns forever, the following lands lying in the county of Lonoke and State of Arkansas, to-wit:

> A right of way One Hundred (100) feet wide, the same being Fifty (50) feet wide on each side of the center line of the main tract of the said Railway Company, as the same is now located on and across the East one-half (E. ¹/₂) of Section Twenty-four (24), Township Two (2) North, Range Seven (7) West.

> To have and to hold the same unto the said The Chicago, Rock Island and Pacific Railway Company and unto its successors and assigns forever, with all appurtenances thereunto belonging.

The outcome as to this issue rests on the interpretation of the deed from the Smileys to the railroad. In *Coleman* v. *Missouri Pacific Railroad Company*, 294 Ark. 633, 745 S.W.2d 622 (1988), we wrote:

> When called upon to construe deeds and other writings, this court is concerned primarily with ascertaining the intention of the parties, and such writings will be examined from their four corners for the purpose of ascertaining that intent from the language employed, and, if such intention clearly appears, effect will be given thereto. *Chicago, Rock Island & Pacific Railroad Company* v. *Olsen*, 222 Ark. 828, 262 S.W.2d 882 (1953). In *Olsen*, the court stated the general rule to be that if the deed purports to convey only a right of way, it does not convey the land itself, but the fee remains in the grantor,

and the railway company acquires a mere easement in perpetuity for railway purposes.

The changing economic and political environment since World War II affecting railroad transportation has spawned a number of cases wherein we have been called on to decide whether a railroad acquired an easement or a fee as grantee by construing documents drafted many years earlier. That determination necessitates that we examine the deeds "from their four corners" to glean the intention of the parties. *Wylie* v. *Tull*, 298 Ark. 511, 769 S.W.2d 409 (1989).

In *Daugherty* v. *Helena & Northwestern Railway*, 221 Ark. 101, 252 S.W.2d 546 (1952), addressing the identical issue, we examined factors we deemed pertinent to the issue: whether a nominal consideration had been paid by the railway company for the strip of land; whether the shape of the tract conveyed indicated a right of way; whether the railway company was given the right "to the stone, gravel and timber and to borrow earth on the said right of way" for the construction and maintenance of the railroad. Noting that it would be unusual, perhaps absurd, to authorize a grantee to take its own stone and gravel and borrow its own earth, we held the deed conveyed a fee. We also observed that the land was conveyed "for a right of way." In *El Dorado & Wesson Railway Co.* v. *Smith*, 233 Ark. 298, 344 S.W.2d 343 (1961), we reached the same result on nearly identical facts, the only difference being that a consideration of $55 was given in *Smith*, as opposed to an entirely nominal consideration in *Daugherty*- not enough to change the result. The holding in those two cases rested primarily on the fact that the deed authorized the grantee to take stone, gravel and earth, for the construction or maintenance of the railroad- a provision plainly inconsistent with a right of way.

In *Coleman* v. *Missouri Pacific, supra,* we interpreted three deeds executed in 1902 by J.S. Coleman and his wife to the Missouri Pacific Railway Company. We upheld the chancellor's finding that the intent of the parties was to convey title in fee rather than to create a servitude. We placed particular emphasis on two factors: Mrs. Coleman renounced her dower and homestead, a needless act if an easement were intended [*See St. Louis & San Francisco Railway Company* v. *Tapp*, 64 Ark. 357, 42

S.W. 667 (1897)], and the railroad company was given the right to remove or affect water, earth, gravel or stone located *outside* the lands granted, leaving an inference that no such authority was necessary as to the use of those materials from *within* the lands conveyed.

Here, we believe the chancellor focused solely on the narrow dimensions of the tract itself as having no suitable purpose other than a right of way. The chancellor cited *Brewer & Taylor Co.* v. *Wall*, 299 Ark. 18, 769 S.W.2d 753 (1989), as closely in point. But the shape of the tract, though pertinent, is hardly conclusive, and other significant factors were passed over unmentioned. In *Brewer & Taylor* we pointedly noted two factors which are absent here. The deeds in *Brewer* were entitled "Right of Way" and specified that the land conveyed was "for a right of way." While the appellees' brief asserts the Smiley deed "specifies that the land is conveyed *for* a right of way" (our emphasis), we find no such provision in the deed itself. The description uses "right of way," but the word "for" appears nowhere in the deed (except "for and in consideration of etc.") and that omission bolsters the argument that the words were used to facilitate identification of the tract conveyed, that is, fifty feet on either side of the center line of a railroad already installed and not otherwise identifiable from the deed. In other words, there is no way to identify the actual tract conveyed by the deed except by an on site inspection to determine where the existing tract was located. In short, the deed fails to contain any wording suggesting its *purpose* is for a right of way.

Turning to other factors which we have found noteworthy: This deed contains an habendum clause [*El Dorado & Wesson Railway Co.* v. *Smith, supra*]; dower and homestead relinquished [*Coleman* v. *Missouri Pacific Railway Company, supra,* and *Wylie* v. *Tull, supra*]; the deed is entitled simply "Quitclaim Deed" [*Brewer & Taylor Co.* v. *Wall, supra*]; and the deed contains no provision authorizing the grantee to remove stone or gravel or to borrow earth [*Daughtery, Coleman, Wylie and Brewer, supra*]. As to the latter provision, appellees argue that because the railroad had been completed many years earlier there was no need to include a provision for the removal of materials in the Smiley deed. But those clauses customarily extend to "construction *and maintenance*" (our emphasis), a need which obvi-

ously continues beyond the initial construction.

This case contains another factor not present in other cases: At the time of the Smiley deed the railroad had already acquired an easement across the Smiley land pursuant to the 1853 act. Thus, there is no discernable reason why the railroad would have negotiated for the conveyance of an easement it had already acquired. It seems far more plausible that in that context the intent of the parties was to convey the fee. A possible consideration to the Smileys may have been that under the act the railroad was authorized to claim one hundred feet on either side of its tract, whereas the conveyance from the Smileys was limited to only fifty feet on either side.

When the foregoing factors are examined, we believe those favoring an intent to transfer the fee readily outweigh the opposing factors and the chancellor's reliance on the dimensions of the tract was clearly erroneous.

### III.

We find no basis for reversal in appellant's third argument. Appellants contend it was error for the trial court to rule that the lands reverted to the appellees rather than to the heirs of appellees' predecessors in title. Appellants cite only *Coleman* v. *Missouri Pacific Railroad Company, supra.*

Appellants point out that appellees' chain of title to the NW 1/4 of Section 24 includes a 1904 warranty deed which excepts "that part occupied and used by the C.O. & R.R. Co. as a right of way. . . ." Furthermore, appellees' chain of title to the E 1/2 of Section 24 includes a 1903 warranty deed "excepting and reserving from this conveyance, however, that part of said tract embracing the right of way of the Choctaw, Oklahoma & Gulf Railroad." Appellants urge that by reason of these exceptions any reversionary interests would devolve on the heirs of the grantors of those two deeds, rather than on appellees.

Appellees counter that contention with the argument that at the time the two deeds were executed the railroad had been in existence over forty years.[3] They maintain a "reservation" is a

---

[3] At least since 1862.

clause by which grantors create and reserve to themselves some right or interest which had no previous existence but "is first called into being by the instrument reserving." They note that a reservation is distinguishable from an exception, the later being defined as "a clause by which a grantor excepts something out of that which he granted before the deed." Because the two terms tend to be used interchangeably they are not treated as conclusive as to the nature of the provision, but must yield to manifest intent. *Bodcaw Lumber Company* v. *Goode*, 160 Ark. 48, 254 S.W.2d 345 (1923). Appellees cite *Jennings* v. *Amerada Petroleum Corporation*, 66 P.2d 1069 (S.C. Okla. 1937); *Goodrich* v. *Easton Railroad*, 37 N.H. 149 (1858); *Moakely* v. *Blog*, 265 P. 548 (C.A. Cal. 1928), for the rule that recitals such as "less the right of way" and "except the right of way" are accepted as meaning that the grantor conveys his or her entire estate while recognizing the dominant estate, i.e. the easement.

We will make no attempt to resolve that issue in this case. The trial court did not reach it, and just how it was presented to him is not revealed in the abstracted record. The case was submitted on written stipulation and we would be dependent solely on the language of two ancient deeds with no other indication of intent. Nor does the decision in the *Coleman* case, the only authority given us, provide guidance. That opinion merely mentions that the appellants, who did not prevail, were heirs of Mr. and Mrs. J.S. Coleman. And since the railroad was held to have acquired the fee, it was not necessary to decide who held the right of reversion.

For the reasons stated, the order appealed from is affirmed in part, reversed in part and remanded for entry of an order or orders consistent with this opinion.

HOLT, C.J., and NEWBERN, J., not participating.