The Honorable George Hopkins State Senator 78 Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This is in response to your request for an opinion on the following question:
 What is the status of land once it is abandoned by a railroad in the State of Arkansas; does it revert to the state or other landowners, or does it remain property of the railroad?
In response to your question, it is my opinion that the answer will depend upon the type of property interest the railroad possessed in the land prior to its being abandoned.[1]
Outlined below is a general discussion of the varying types of property interests a railroad might possess in its right of way and the status of the land once those interests are abandoned.[2]
With regard to the disposition of an abandoned railroad right of way, the following has been stated: "The operation and effect of an abandonment of a railroad right of way generally depends upon the character of the estate and interest of the railroad therein." 65 Am. Jur.2d Railroads § 84 (1972). With regard to the property interest which a railroad may possess in its right of way and the effect of such interest on abandonment of a right of way, the editors of American Jurisprudence have provided the following summary:
 Where only an easement is taken for a right of way, and the use for such purpose ceases, the land is discharged of the burden and the right to the possession reverts to the original landowner or his successors in interest, and it does not go to grantees and successors in interest of the railroad company. This rule is applied whether the easement was acquired by purchase, condemnation, or adverse possession. Under the view that a conveyance of a strip of land to a railroad company for a right of way does not vest an absolute title in the railroad company even though the conveyance is by an instrument which is in form a general warranty deed, the interest conveyed is limited by the use for which the land is acquired, and, when that use is abandoned, the property will revert to the adjoining owner.
65 Am. Jur.2d Railroads § 85 (1972).
With regard to railroads which possess a fee simple property interest, the following has been stated:
 The rule that when the fee simple is taken, the right to the possession of the land does not revert to the original landowner, applies where the land has been acquired either by the exercise of the power of eminent domain or by purchase for the right of way of a railroad company, and its use for such purpose has ceased. The fee generally continues in the railroad company or its successors in interest.
65 Am. Jur. 2d Railroads § 86 (1972).[3]
The provisions set forth above contain the general rules of law in this area, and the case law in Arkansas seems to be in accord with these general precepts. In Coleman v. Missouri Pac. R.R.,294 Ark. 633, 745 S.W.2d 622 (1988), the Arkansas Supreme Court stated the general rule to be that if a deed "purports to convey only a right of way, it does not convey the land itself, but the fee remains in the grantor, and the railway company acquires a mere easement in perpetuity for railway purposes."294 Ark. at 635. See also Nature Conservancy v. Kolb, 313 Ark. 110,853 S.W.2d 864 (1993); Chicago, Rock Island Pacific R.R. Co. v.Olsen, 222 Ark. 828, 262 S.W.2d 882 (1953). To determine whether an easement, as opposed to a fee simple, has been conveyed to a railroad, the Arkansas Supreme Court has identified the following four indicators: "First, the deed mentions right of way. Second, only nominal consideration is stated. Third, the shape of the tract (long, narrow strip) makes other uses unlikely. Fourth, the railroad is given the specific right to take earth from the strip itself." Wylie v. Tull, 298 Ark. 511, 513, 769 S.W.2d 409
(1989). See also Daugherty v. Helena Northwestern Ry.,221 Ark. 101, 252 S.W.2d 546 (1952); El Dorado Wesson Ry. Co.v. Smith, 233 Ark. 298, 344 S.W.2d 343 (1961); Coleman v.Missouri Pacific R.R., 294 Ark. 633, 745 S.W.2d 622 (1988);Nature Conservancy v. Kolb, 313 Ark. 110, 853 S.W.2d 864
(1993). On the other hand, the Court has identified these factors to determine whether there is intent to convey a fee simple interest: "(1) the right of increasing the width of the strip of land for necessary slopes, embankments, and turnouts and with the right of changing water courses, and of taking a supply of water and of borrowing or wasting earth, stone or gravel outside the strip; (2) the conveyance of additional land besides the strip; and (3) the relinquishment of dower rights." Brewer Taylor Co.v. Wall, 299 Ark. 18, 21, 769 S.W.2d 753 (1989). When construing deeds or other writings, a court is "concerned primarily with ascertaining the intention of the parties, and such writings will be examined from their four corners for the purpose of ascertaining that intent from the language employed." Brewer Taylor Co. v. Wall, 299 Ark. 18, 20, 769 S.W.2d 753 (1989). Determining whether a fee simple or merely an easement has been conveyed to a railroad is important, as that determination will govern the disposition of the property upon abandonment by the railroad. If merely an easement has been conveyed, the land reverts to the grantors or their successors in interest. If, on the other hand, a fee simple interest has been conveyed, the railroad or its successors in interest appear to retain the land even upon abandonment.[4]
There is also an Arkansas statutory provision concerning abandonment of railroad rights-of-way which were acquired by eminent domain. In this regard, A.C.A. § 23-12-205(b)(1) (1987) provides the following:
 When a railroad abandons a right-of-way which was acquired by eminent domain, and where there is a municipally owned natural gas pipeline buried thereon or there is a municipally owned natural gas pipeline buried on that railroad's right-of-way at a point within ten (10) miles of the abandoned right-of-way, the railroad shall offer to sell the abandoned right-of-way to the municipality at the fair market value of the right-of-way.
See A.C.A. § 23-12-205(a) (1987) for definition of the term "abandons" for purposes of the foregoing statute.
In sum, the determination as to the status of land which has been abandoned by a railroad will depend upon the type of property interest the railroad possessed in the land prior to abandonment. These determinations will require a factual inquiry on a case by case basis, and private attorneys for the parties involved should be consulted. The discussion provided herein is a general outline of the law as it relates to the disposition of lands abandoned by railroads and hopefully will provide some guidance in this matter.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely
WINSTON BRYANT Attorney General
WB:cyh
[1] It should be noted that if a rail carrier is subject to the jurisdiction of the Interstate Commerce Commission (ICC) under49 U.S.C.A. § 10501 et seq., authorization of the ICC is necessary in order for a rail carrier to abandon any part of its railroad line. See 49 U.S.C.A. § 10903. Since your question presumes that a legal abandonment of a railroad line has occurred, I will not outline the federal laws regarding abandonment of railway lines; however, reference should be made to applicable federal law and ICC regulations if an issue arises in this regard. Reference should also be made to A.C.A. §§23-12-612 to -613 (1987) regarding state authorization for abandonment of railroad service. Additionally, as for what actions constitute abandonment of railroad rights-of-way, seeCannco Contractors, Inc. v. Livingston, 282 Ark. 438 (1984);Gurdon Ft. Smith Railroad Co. v. Vaught, 97 Ark. 234,133 S.W. 1019 (1911).
[2] Your question presumes that abandonment of a railroad line has already occurred. However, for those cases in which abandonment has not yet occurred, reference should be made to The National Trails System Act Amendments of 1983 ("rails-to-trails" program), which are codified at 16 U.S.C. § 1241 et seq.
These amendments authorize the Interstate Commerce Commission to "preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails. Section 8(d) provides that a railroad wishing to cease operations along a particular route may negotiate with a State, municipality, or private group that is prepared to assume financial and managerial responsibility for the right-of-way. If the parties reach agreement, the land may be transferred to the trail operator for interim trail use, subject to ICC-imposed terms and conditions; if no agreement is reached, the railroad may abandon the line entirely and liquidate its interest. Section 8(d) of the amended Trails Act provides that interim trail use `shall not be treated, for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. 16 USC § 1247(d). . . .' . . . By deeming interim trail use to be like discontinuance rather than abandonment, . . . Congress prevented property interests from reverting under state law." Preseault v. InterstateCommerce Commission, 494 U.S. 1, 6-8 (1990). See alsoPreseault v. United States, 24 Cl. Ct. 818 (1992) (holding that the Second Circuit Court of Appeals' view that "even if petitioners held the reversionary interest they claim, no taking occurred because `no reversionary interest can or would vest' until the ICC determines that abandonment is appropriate" was unjustified, as the view "conflates the scope of the ICC's power with the existence of a compensable taking and threatens to read the Just Compensation Clause out of the Constitution. The ICC may possess the power to postpone enjoyment of reversionary interests, but the Fifth Amendment and well-established doctrine indicate that in certain circumstances the Government must compensate owners of those property interests when it exercises that power." 24 Cl. Ct. at 830.)
[3] See A.C.A. § 18-15-1205 (1987) regarding railroad rights-of-way obtained through eminent domain. Subsection (b) of that statute provides that once compensation is made to the owner of the lands for the right-of-way, "it shall be lawful for the railroad company to enter upon, use, and have the right-of-way over the lands forever."
[4] For disposition of an abandoned railroad right of way where right of way was granted using public lands of the United States,see 43 U.S.C.A. § 912.